# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**16-224**


**ERICA SCOTT, ET AL.**

**VERSUS**

**MAC-RE, LLC, D/B/A SOUTHERN APARTMENTS**


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. C-201311139
HONORABLE MICHELLE M. BREAUX, DISTRICT JUDGE

**********

**D. KENT SAVOIE**
**JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Shannon J. Gremillion, and D. Kent Savoie, Judges.


**AFFIRMED.**

**M. Terrance Hoychick**
**Attorney at Law**
**141 South Sixth Street**
**P. O. Drawer 391**
**Eunice, LA 70535-0391**
**(337) 457-9331**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
**Erica Scott, Individually and on Behalf of the Minor,**
**Alyssa Grace Scott**

**David L. Morgan**
**Stockwell, Sievert, Vicellio**
**Clements & Shaddock, L.L.P.**
**P.O. Box 2900**
**Lake Charles, LA 70602**
**(337) 436-9491**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**MAC-RE, LLC, d/b/a Southern Apartments**

**SAVOIE, Judge.**

In this wrongful eviction suit, Plaintiff Erica Scott (Scott), individually and on behalf of her minor daughter, Alyssa Grace Scott, appeals the ruling of the trial court, dismissing her claims against Defendant MAC-RE, LLC d/b/a Southern Apartments (MAC-RE). MAC-RE also appeals that part of the judgment denying its claim for attorney's fees and costs. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

From February 2009 through the summer of 2013, Scott leased an apartment from Southern Apartments, which is owned by MAC-RE, in Iota, Louisiana. The rental period was for one year with an option to renew at the end of the term for an additional one year term thereafter. The lease agreement at issue was signed on February 11, 2013, by Scott and Sherry Hebert (Hebert), the manager of Southern Apartments. Because Scott received federal housing aid, she was required to fill out a USDA Rural Development Tenant Certification. The certification included questions about Scott's income, assets, and employment. The amount of aid Scott received was determined by her answers in the certification. In addition to the certification, Scott also signed an Affidavit of Non-Employment wherein she certified that she was not employed and did not anticipate a change in her employment status over the next year. Based on this information, the amount of Scott's rent was calculated to be fifty-one dollars ($51) per month. Scott lived in the apartment with her daughter, Alyssa Grace.

MAC-RE owns 113 apartment complexes in Louisiana, Mississippi, and Texas. On May 29, 2013, Donna Thompson, General Manager of MAC-RE, sent a company-wide memorandum to all of its managers of these complexes. The managers were instructed to pass on the memorandum to the residents of the

apartment complexes.  The memorandum re-iterates that rental payment is due on the 1st of every month.  A 10-day grace period is allowed for payment of rent without penalty.  On the 11th day of the month, a late fee of ten dollars ($10) or 5% of the gross tenant contribution is charged.  The memorandum states:

> This notice is to make it understood that beginning June 1st 2013 no longer will any extensions be granted, no longer will any rent be accepted after the 12th when the lease termination is served.  Anyone that has not paid rent by the 11th will receive a lease termination and eviction procedures will begin.

Sherry Hebert testified that she printed it out, went door to door, and gave a copy to everyone who answered.  If no one answered, she placed it on their door with a note requesting the resident visit the office and sign the document.  Scott alleges that she did not receive it.

In her petition, Scott alleges that she attempted to submit her rental payment to Hebert on June 13, 2013, but her payment was refused because it was late.  However, in her trial testimony, this date changes to June 11, 2013.  Because Scott had paid her rent late in the past, she expected it to be accepted.  Scott alleges in her petition that, at the same time payment was refused, Hebert gave her a five day notice to vacate the property.  However, in her trial testimony she states that the notice was posted on her door on June 13, 2013.  Regardless, the Notice of Lease Termination gave her five days to voluntarily vacate the premises, which she did not do.  This notice was signed by Sherry Hebert and Peggy Thibodeaux (Hebert's supervisor) on June 13, 2013.

Justice of the Peace for Ward 4, Acadia Parish, Eldridge Pousson (Pousson) signed a five day notice to vacate directed to Scott and had the constable serve her with it.  On July 11, 2013, a five day notice was posted to Scott's door by Mike Habetz, the constable for Ward 4, Acadia Parish at the time.  He testified that he

made three attempts to serve her at Southern Apartments at different times of the day, but she was never home. On the last attempt, he posted the paperwork to her door. In her trial testimony, she admitted that she did receive this notice. She also testified that she called Pousson who told her that she had five days to vacate the apartment. On July 25, 2013, Pousson issued a Writ of Ejection ordering the constable to eject Scott and her belongings from the property and place Hebert in full possession.

Scott found a new residence at the end of July and, over the weekend of August 2-4, 2013, moved some of her belongings from the apartment to the new house. Scott alleges that, when she went to her apartment on Tuesday, August 6, 2013, the locks had been changed. This is disputed by Hebert. Hebert testified that she does not know how to change the locks on a door. Southern Apartments employed a maintenance man to carry out those duties; however, he took a leave of absence in May 2013, because of a family emergency and had not returned by August. Scott also alleges that the same day, August 6, Hebert told her that she could move the remainder of her items on Tuesdays and Thursdays while Hebert was present at the apartment complex (Hebert also manages Acadian Place Apartments for MAC-RE; she works there on Mondays, Wednesdays and Fridays and at Southern Apartments on Tuesdays and Thursdays). This was also disputed by Hebert. She testified that she was sent by her supervisor to help another of MAC-RE's apartments August 6-8, 2013 and, therefore, she could not have spoken to Scott on August 6.

On August 11, 2013, acting under the legal authority of the Writ of Ejection, Hebert, her son, her grandson, and a friend, entered Scott's apartment to clean it out. Again there is conflicting testimony. Scott alleges that she had personal

property worth twenty thousand dollars ($20,000) in the apartment. Hebert states that there was trash on the floor, rotting food on the cabinets, broken toys, a broken chest-of-drawers, an old mattress, and dirty dishes. She testified that there was nothing of value left in the apartment. She filled trash bags and put them in the dumpster on site. Anything that did not fit in the dumpster was hauled to the landfill.

Scott filed the present lawsuit on October 31, 2013, alleging that she sustained damages due to her wrongful eviction from the property. She requested reasonable attorney's fees for the prosecution of her claim under the Louisiana Unfair Trade Practice and Consumer Protection Law (LUTPA). *See* La.R.S. art. 51:1409. In its' Amended Answer and Reconventional Demand, MAC-RE asserts that Scott's LUTPA claim is groundless and presented in bad faith and, as a result, MAC-RE is entitled to attorney's fees and costs. *See Id.* After a trial on the merits held July 27, 2015, the trial court ruled in favor of MAC-RE on the main demand, dismissing Scott's claims; however, the trial court denied MAC-RE's request for attorney's fees and costs. Both parties appealed.

## DISCUSSION

### I. *Wrongful Eviction*

Both parties agree that an improper eviction procedure was used by Justice of the Peace Pousson to procure Scott's eviction from Southern Apartments. The question for the court to decide is whether MAC-RE is legally responsible to Scott for her wrongful eviction after it relied on a judgment signed by the justice of the peace. It is a legal question, and "[q]uestions of law are reviewed by the appellate courts under the de novo standard of review." *Noel v. Noel*, 15-37, p. 6 (La.App. 3 Cir. 5/27/15), 165 So.3d 401, 408, *writ denied*, 15-1121 (La. 9/18/15), 178 So.3d

4

147. The trial court found that, as a third party, MAC-RE was not responsible to Scott for the wrongful eviction. We agree.

This case presents an interesting issue – in fact, we could not find any cases that have contemplated it before. Certainly, there are wrongful eviction cases that have been reviewed by the appellate courts. In those cases, however, the landlord has done some act toward the eviction process prior to filing for an eviction or in some cases, not filing for eviction at all. *See Horacek v. Watson*, 11-1345 (La.App. 3 Cir. 3/7/12), 86 So.3d 766; *Platinum City, L.L.C. v. Boudreaux*, 11-559 (La.App. 3 Cir. 11/23/11), 81 So.3d 780. This is not a case in which the landlord has resorted to self-help. *See Pelleteri v. Caspian Group, Inc.*, 02-2141 (La.App. 4 Cir. 7/2/03), 851 So.2d 1230. MAC-RE gave Scott notice to vacate and, thereafter, instituted eviction proceedings through the justice of the peace. It is the justice of the peace who utilized the incorrect eviction procedure. We must decide whether MAC-RE is at fault.

Louisiana Code of Civil Procedure Article 2004 states, "[a] final judgment obtained by fraud or ill practices may be annulled." The nullity action must be brought within one year of the discovery of the fraud or ill practice. *See Id*. "'Ill practice' includes any improper practice or procedure which operates, even innocently, to deprive a litigant of some legal right." *Expert Oil & Gas, L.L.C. v. Mack Energy Co.*, 16-68, p. 4 (La.App. 1 Cir. 9/16/16), 203 So.3d 1080, 1084. "The 'legal right' of which a litigant must be deprived in order to have a judgment annulled includes the right to appear and assert a defense and the right to a fair and impartial trial." *See Id*.

Scott admitted that she received MAC-RE's notice to vacate and the five day notice to vacate signed by Pousson. She also testified that she spoke with Pousson

regarding the notice and that he told her she must vacate the premises. She secured housing and, according to Hebert, had moved everything of value out of her apartment. She clearly had constructive notice that she was being evicted from her apartment. However, because an improper eviction procedure was utilized, she was deprived of the right to a hearing. Scott's proper course of action was to institute a nullity action, which she did not do. As a result, neither the signed five-day notice nor the July 25, 2013 Writ of Ejection was ever overturned. We find that MAC-RE acted under the authority of the Writ of Ejection, which was signed by the justice of the peace, placed them in possession of the premises, and was never nullified. Therefore, it is not responsible to Scott for any damage that she sustained as a result of the eviction.

Furthermore, we agree with MAC-RE's alternative argument that Scott abandoned the property. Abandonment is a jurisprudential exception to the rule that landlords must follow the statutory eviction procedures found in La.Code Civ.P. art. 4701-4735. *Horacek*, 86 So.3d 766. Louisiana Code of Civil Procedure Article 4731 states that "[a]fter the required notice has been given, the lessor or owner . . . may lawfully take possession of the premises without further judicial process, upon a reasonable belief that the lessee . . . has abandoned the premises." "In determining whether abandonment has occurred, there must be a showing that the lessee voluntarily relinquished the premises and intended to terminate without vesting ownership in another." *Southpark Comm. Hosp., LLC v. Southpark Acquisition Co., LLC*, 13-59, pp. 15-16 (La.App. 3 Cir. 10/30/13), 126 So.3d 805, 816, *writ denied*, 13-2794 (La. 2/28/14), 134 So.3d 1175 (quoting *Bill Kassel Farms, Inc. v. Paul,* 96–462, p. 5 (La.App. 3 Cir. 12/11/96), 690 So.2d 807, 809, *writ denied*, 97-712 (La. 4/25/97), 692 So.2d 1095). "[T]he abandonment of

6

property by a tenant to such an extent as to vest title and control in the landlord involves both an act of abandonment and specific intent to abandon." *Id.* (quoting *Powell v. Cox,* 92 So.2d 739, 742 (La.App. 2 Cir.1957).

In the present case, Hebert testified that there was nothing of value in the apartment when she entered. Scott admitted that she secured other housing to live in due to the eviction and began to move her things there. She further testified that she had her utilities transferred from Southern Apartments on August 5, 2013. Hebert testified that when she checked the meter on July 24, 2013, it had a yellow tag on it, indicating that the electricity was shut off. Hebert further testified that, on the same day, she entered Scott's apartment after her knock went unanswered. She smelled an odor and found old food on a plate on the counter. When she opened the freezer, the food was rotten. There were roaches everywhere and there was no water to wash her hands. She called Orkin, a pest control company, due to the fleas and roaches. Scott testified that she did not see Hebert between June 11, 2013, and August 11, 2013. Scott alleges this was due to her work schedule. Hebert also testified that she did not see Scott during that time. Hebert stated that, when she cleaned out the apartment, it was her opinion that Scott was not living there or planning to stay there due to the living conditions. It is our opinion that there is enough evidence in the record to conclude that Scott abandoned her apartment at Southern Apartments.

## II. MAC-RE's claim for attorney's fees and costs

In Scott's petition, she asserts that MAC-RE violated LUTPA and requests reasonable attorney's fees under La.R.S. art. 51:1409. Under this article, LUTPA provides a right of action and damages to a party who suffers "any ascertainable loss of money or movable property" as the result of an unfair deceptive act or

practice. La.R.S. art. 1409(A). The article also provides reasonable attorney's fees and costs to a defendant when the LUTPA claim is found to be "groundless and brought in bad faith or for purposes of harassment." *Id.* "This provision is penal in nature and is subject to reasonably strict construction. The court has discretion in determining whether to award attorney fees under the statute." *Double-Eight Oil and Gas L.L.C. v. Caruthurs Producing Co., Inc.*, 41,451, p. 11 (La.App. 2 Cir. 11/20/06), 942 So.2d 1279, 1286.

The trial court denied MAC-RE's claim under La.R.S. art. 51:4109(A), finding Scott did not act in bad faith. Based on the record, we find no abuse of the trial court's discretion.

## DECREE

The judgment of the trial court dismissing the claims of Erica Scott, individually and on behalf of her minor daughter, Alyssa Grace Scott, is affirmed. The judgment denying MAC-RE's request for attorney's fees and costs is also affirmed. All costs associated with these proceedings are assessed to Erica Scott.

**AFFIRMED.**